UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES RICHARD,

     Petitioner,

  V.

DAVID ROCK,

     Respondent.

**REPORT AND RECOMMENDATION**

08-CV-145
(DNH/VEB)

---

# I. INTRODUCTION

Petitioner James Richard, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[1]  Petitioner is an inmate at the Great Meadow Correctional Facility.  In 2002, he was convicted in a New York State court of second degree kidnaping, second degree assault, and first degree coercion.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

The Honorable Norman A. Mordue, Chief United States District Judge, referred the instant case to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

---

[1]The form Petitioner used to write his habeas corpus petition states "Form for use in applications for habeas corpus under 28 U.S.C. Section 2241." (Docket No. 1).  28 U.S.C. § 2241 provides habeas relief for petitioners who are not contesting their conviction.  Petitioner is in state custody and is, in fact, contesting his conviction.  Therefore, the proper application would have been to proceed pursuant to 28 U.S.C. § 2254.  Petitioner is proceeding *pro se* in this matter, therefore, this Court will consider his petition as though it were filed pursuant to 28 U.S.C. § 2254.

## II. BACKGROUND

**A.     Facts**

The following factual summary is derived from the state court records. During the evening hours of November 29, 2001, and the morning hours of November 30th, Petitioner duct taped Tamara W.[2] to a pole, shot her with a stub gun, forced her to ingest his feces, compelled her at gunpoint to lick the anus of another woman, and forced her to perform oral sex on a dog. (T at 69-77).[3]

Petitioner and Tamara had previously had a sexual relationship. After that relationship ended, Tamara posted a flyer accusing Petitioner of having AIDS. (Id.). On the evening of November 29, 2001, Petitioner arrived at 123 Broad Street in Albany, New York, where Tamara was visiting friends.

Fearing that Petitioner planned to retaliate for the flyer, Tamara locked herself in a room. Petitioner kicked down the door and, with knife in hand, ordered Tamara into the bathroom, where he sat on the toilet and moved his bowels. At gunpoint, he directed Tamara to eat his feces from the toilet and swallow them. Tamara complied while bystanders videotaped and photographed the incident at Petitioner's direction. (T at 77-82, 343-45, 381).

Petitioner next forced Tamara into his truck at gunpoint, and took her to Shameeka Lewis' ("Lewis") house in Albany. When they arrived at Lewis' house, Petitioner forced Tamara into the basement. In the basement, Petitioner demanded Tamara remove all of

---

[2]In accordance with New York Civil Rights Law § 50-b, the surname of the victim is abbreviated.

[3]References preceded by "T" are to the transcript pages of Petitioner's trial.

2

her clothing. Petitioner then tied her to a pole with duct tape, placing a sock in her mouth and covering her mouth up with duct tape. (T at 82-89, 257-65, 347-49, 395-96, 420-24, 515).

Petitioner left Tamara in the basement for a short period of time and returned with a stun gun, which he then twice applied to her stomach. Petitioner then used a BB gun to shoot Tamara in the stomach and chest. Tamara suffered bleeding puncture wounds to her chest and stomach and was left with a scar on her breast. (T at 89-96, 265-71, 349-51, 397, 413-14, 433, 510-16, 534-35, 563-68, 571-76).

Petitioner then removed the duct tape and ordered Tamara upstairs to a bedroom. Once in the bedroom, Petitioner ordered Lewis to kneel on the bed on all fours. He then instructed Tamara to lick Lewis' anus, which she did. Petitioner then threatened Tamara at gunpoint to perform oral sex on a dog. (T 97-100, 271-79, 351-55, 381, 426-28, 434-41, 533-34). When Tamara was finally free from Petitioner she called the police and received medical treatment. (T at 106-108). Petitioner fled to Virginia and Connecticut, where he was later apprehended by the police.

Thereafter, an Albany County Grand Jury returned Indictment Number 28-7226, which charged Petitioner with Kidnaping in the Second Degree, two counts of Assault in the Second Degree, and three counts of Coercion in the First Degree.

### B.    State Trial Court Proceedings

The Honorable Joseph C. Teresi, Albany County Court Judge, presided over Petitioner's jury trial proceedings. The trial began on September 9, 2002. Petitioner was represented by Eugene Grenz, Esq. On September 18, 2002, the jury found Petitioner

guilty of Kidnaping in the Second Degree, in violation of New York Penal Law ("NYPL") §135.20[4]; two counts of Assault in the Second Degree, in violation of NYPL §120.05(2); and three counts of Coercion in the First Degree, in violation of NYPL §135.65(1). (T at 780-83).

On October 14, 2002, Petitioner moved the State Supreme Court to set aside the verdict pursuant to CPL §30.30 asserting that he was convicted of kidnaping in the second degree in violation of the merger doctrine. The court denied the motion at sentencing as meritless. (S[5] at 5 at Docket No. 9 "Attachment #4").

On October 22, 2002, Petitioner was sentenced as a second felony offender to a determinate term of twenty five (25) years imprisonment on the kidnaping count, seven (7) years determinate for each of his two assault convictions, and three and one half (3 1/2) to seven (7) years for each of his three convictions of coercion.  All of Petitioner's sentences were to run consecutively. (S at 8-9, 18-20).  Therefore, Petitioner received a total aggregate sentence of forty nine and one half (49 1/2) to sixty (60) years in prison.

**C.     State Appellate Proceedings**

    **1.     Direct Appeal**

Petitioner, represented by Carl Silverstein, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted five arguments before the Appellate Division: (1) he was convicted of kidnaping in the second degree in violation of New York's merger doctrine; (2) the trial court improperly

---

[4] Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[5] References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

4

refused to charge a lesser degree of assault under count two of the indictment (BB gun charge), and the verdict was against the weight of the evidence; (3) the prosecutor committed a Brady violation, failed to correct witness testimony, and made improper remarks on summation; (4) the trial court made "intemperate" rulings and remarks to defense counsel in front of the jury. the trial court charged the jury improperly, and the evidence was legally insufficient as to count three (assault with stun gun), counts four to six (coercion); and (5) the trial court improperly imposed consecutive sentences, and imposed a sentence that exceeded the maximum aggregate term permitted by New York law.

In a decision issued on June 15, 2006, the Appellate Division, found that the trial court erred by failing to charge the lesser included offense of assault in the third degree with respect to the count of the indictment that charged Petitioner with assault in the second degree for the use of the stun gun.[6] The Appellate Division rejected the balance of Petitioner's argument, reversed the portion of the conviction related to the stun gun assault, and otherwise affirmed the conviction. People v. Richard, 817 N.Y.S.2d 698 (3d Dep't 2006).

Petitioner filed application for leave to appeal to the Court of Appeals, raising some, but not all of the claims presented to the Appellate Division. The Court of Appeals denied the application on October 30, 2006. People v.Richard, 7 N.Y.3d 869 (2006).

---

[6] The issue of the reversed assault conviction was taken up by the trial court on August 23, 2006. The prosecutor stated that the state would be willing to dismiss the assault charge as to the stun gun rather than put the victim through another trial on that issue. The court dismissed the count and remanded Petitioner to the custody of the Department of Corrections. See (Docket No. 9, "Attachment #4" p.163-165).

**D.  Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).

Petitioner asserts four grounds for relief in his Petition: (1) he was convicted in violation of New York's merger doctrine; (2) the trial court improperly refused to charge a lesser degree of assault under Count Two of the indictment (BB gun), and the verdict was against the weight of the evidence; (3) the prosecutor committed a Brady violation, failed to correct the testimony of two witnesses, and made improper remarks on summation; and (4) the trial court's imposition of consecutive sentences was illegal, the court made "intemperate" rulings and remarks, the court failed to transcribe the pre-charge conference, the jury charge was "erroneous" in general and, in particular, as to the kidnaping and assault charges, and the evidence was legally insufficient as to the coercion convictions.  (Docket No. 1).

On August 8, 2008, Respondent filed a Response and memorandum of law in opposition.  (Docket Nos. 6 & 7).  Respondent asserts that this Petition is untimely as well as meritless.  Petitioner filed his Traverse on November 7, 2008.  (Docket No. 13).  For the reasons set forth below, the Court recommends that the petition be DISMISSED.

### III. DISCUSSION

**A.     Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A

7

state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

    **1.    Statue of Limitations**

Because the Petition was filed after the enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") on April 24, 1996, it is subject to a one-year statute of limitations that runs from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

For Petitioner, like most habeas petitioners, Section 2244(d)(1)(A) sets the applicable starting point for the one-year period of limitations-that is, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on October 30, 2006. People v.Richard, 7 N.Y.3d 869 (2006).

Because Petitioner did not seek review by the United States Supreme Court, his conviction became final on January 29, 2007,ninety (90) days after the Court of Appeals denied his application for leave to appeal,[7] *i.e.,* the date his time to file a petition seeking a writ of certiorari from the Supreme Court expired. See Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir.), cert. denied, 534 U.S. 924, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001). Petitioner therefore had one year, until January 29, 2008, to timely file his habeas petition.

---

[7] Ninety (90) calendar days after October 30, 2006 is January 28, 2007. However, because January 28, 2007, was a Sunday, the filing deadline becomes the next business day, which was Monday, January 29, 2007. See Fed R. Civ. P. 6 (a)(3).

9

AEDPA's one-year limitations period is statutorily tolled during the pendency of a properly-filed application for state post-conviction relief. 28 U.S.C. § 2244(d)(2); see Acosta v. Artuz, 221 F.3d 117, 119 (2d Cir.2000). In the present case, according to the records provided to this Court, Petitioner did not file any applications for state post-conviction relief after his direct appeal. Therefore, Petitioner is not entitled to benefit from any statutory tolling.

### 2. Date of Filing

The Petition is dated January 30, 2008. According to the official court docket, the envelope containing the Petition was postmarked February 5, 2008. The Petition was actually filed by the Clerk of the Court on February 7, 2008.

Petitioner requests that this Court deem the Petition filed as of January 30, 2008, the date it was apparently signed. See (Docket No. 13 ¶ 1). This Court grants this request and finds that Petitioner is entitled to the benefit of the "prisoner mailbox rule."

Pursuant to that rule, a motion or pleading filed by a *pro se*, incarcerated petitioner is deemed filed the day that he or she turned the pleading over to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk).

It is not clear when Petitioner delivered the Petition to prison officials. The fact that it was postmarked on February 5th raises some question as to whether it was actually delivered to the officials on January 30th. However, courts in this Circuit have generally concluded that "[a]bsent evidence to the contrary, the Court assumes that [the prisoner]

gave his petition to prison officials for mailing on the date he signed it." Torres v. Irvin, 33 F. Supp .2d 257, 270 (S.D.N.Y.1998) (citing Hunter v. Kuhlman, 97 Civ. 4692, 1998 WL 182441, at *1 n. 2 (S.D.N.Y. Apr. 17, 1998) (deeming petition filed on date on which petitioner signed it); Hughes v. Irvin, 967 F.Supp. 775, 778 (E.D.N.Y.1997); Jones v. Artuz, No. CV 97-2394, 1997 WL 876735, at *1 (E.D.N.Y. Sept. 13, 1997)); accord Johnson v. Coombe, 156 F.Supp.2d 273, 277 (S.D.N.Y.2001).

Accordingly, this Court will deem the Petition filed as of January 30, 2008. However, as set forth above, the statute of limitations expired on January 29, 2008. As such, even using the most liberal filing date, which is the date urged by Petitioner, the Petition was untimely.

### 3. Equitable Tolling

Because AEDPA's one-year period has been construed as a statute of limitations rather than a jurisdictional bar, courts may equitably toll the period. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.2000). Equitable tolling applies only in the "rare and exceptional circumstance." Id. (citation omitted).

In order to justify equitable tolling of the one-year period of limitations, the petitioner must show that "extraordinary circumstances" prevented him from filing his petition on time. See id. (citing Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir.1996) (noting that the Second Circuit has applied equitable tolling doctrine "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights ....'") (citation omitted)).

Furthermore, a petitioner seeking equitable tolling must have acted with "reasonable diligence" throughout the period he seeks to toll. See id. The petitioner must demonstrate

11

a causal relationship "between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir.2000); Hizbullahankhamon v. Walker, 255 F.3d 65, 76 (2d Cir.2001).

In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances. Amante v. Walker, 268 F.Supp.2d 154, 158 (E.D.N.Y.2003) (citing Lindo v. Lefever, 193 F.Supp.2d 659, 663 (E.D.N.Y.2002)); see also Anderson v. O'Gara, 2002 WL 1633917, at *4 (S.D.N.Y. July 23, 2002) (lack of notice of denial of *coram nobis* petition is not "extraordinary" because, "[i]n the absence of some specific legal requirement or promise, there is nothing unusual about a court issuing a decision and a litigant not receiving a copy of it in the mail").

Moreover, simple ignorance of the applicable rules does not excuse a petitioner's failure to file a timely petition. See Plowden v. Romine, 78 F.Supp.2d 115, 120 (E.D.N.Y.1999) ("There is no limiting principle to [petitioner's] argument that simple ignorance-absent any showing of diligence on his part or allegations of impediments to his staying informed about this case-should provide a basis for equitable tolling; to hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely.").

In the present case, Petitioner has not alleged that "extraordinary circumstances" prevented him from filing his habeas petition on time and no such circumstances are

apparent on the record before the Court.

Further, the fact that the filing was only one day late is not itself a basis for equitable tolling. See Smith v. Conway, No. 07 Civ. 7174, 2008 WL 2531194, at *3 (S.D.N.Y. June 24, 2008); cf. also United States v. Locke, 471 U.S. 84, 101 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it."); Carlisle v. United States, 517 U.S. 416, 430 (1996) (holding defendant that moved one day late for judgment of acquittal was procedurally barred).

Thus, the Court cannot find that Petitioner is entitled to equitable tolling.

### 4. Petitioner's Motion for Stay

On November 7, 2008, Petitioner filed a letter motion requesting a "stay of proceedings in order to necessarily file a Writ of Prohibition within this Court, before the assigned Magistrate." (Docket No. 14). Petitioner further explained that the stay was necessary to allow him "to proceed by way of obtaining discovery and filing an Order to Show Cause as well for a preliminary Injunction and Restraining Order directed against varies [sic] necessary and involved parties claiming and or assumed having jurisdiction and custody over the 'corpus' of the petitioner unlawfully." Respondent opposed the motion via letter filed on December 12, 2008. (Docket No. 12). Petitioner filed a reply letter in support of the motion on December 31, 2008. (Docket No. 16).

Petitioner offers no coherent legal argument in support of the motion and fails to explain how the requested relief might even arguably impact the statute of limitations analysis set forth above. Accordingly, the motion is denied and it is recommended that the

Petition be dismissed as barred by the applicable statute of limitations.

## IV. CONCLUSION

For the reasons stated above, the Court recommends James Richard's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. The Court further recommends that Petitioner's motion requesting stay (Docket No. 14) be denied. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:	January 6, 2009
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 6, 2009

Victor E. Bianchini
United States Magistrate Judge